Franklin County v. Dessem

*John W. Keller*, for plaintiff.

*Charles H. Davison*, for defendant.

DEPUY, P. J., August 7, 1964.—Plaintiff, County of Franklin, filed its complaint in mandamus on May 26, 1964. The complaint avers that the suit is brought by the three members of the Board of Commissioners of Franklin County, that defendant is the sheriff of Franklin County, that plaintiff by its board of commissioners at a regular meeting on January 6, 1964, established hours during which the courthouse offices should be open during the year, namely weekdays from 8:30 a.m. to 4:30 p.m. and Saturdays from 8:30 a.m. to 12 o'clock noon, except on certain named holidays, that plaintiff established the said hours so that the public would be assured of certain times when business could be transacted at all the courthouse offices, that on May 1, 1964, defendant sheriff gave public notice that his office would not, on May 2, 1964, and on subsequent Saturdays, be open for business but instead would be open on Friday evenings, commencing May 1, 1964, and posted a sign at his office to the same

effect, that plaintiff county on May 8, 1964, made demand upon the sheriff to adhere to the established business hours for the courthouse offices, that defendant nevertheless on Saturday, May 9, 1964, caused his office to be open for less than the established hours, and persists in the exhibition of a sign at his office announcing that the same will be closed on Saturdays, that his office was closed on Saturday, May 23, 1964; that it is defendant's legal duty to keep his office open during the business hours and business days established by plaintiff county; that the county brings this suit to assure regular business hours for all the courthouse offices for the benefit of the public desiring to use those offices; and that plaintiff county is without any other adequate remedy at law.

The county prays for an order upon defendant sheriff commanding him to keep his office open on Saturday mornings from 8:30 a.m. until 12 o'clock noon, using the prevailing time in the community. The complaint was served upon defendant by the coroner of Franklin County.

On June 11, 1964, defendant filed preliminary objections in the nature of motion to strike off the complaint on the ground that (1) the action was not brought by the proper plaintiff, (2) the action was not brought in the name of the Commonwealth of Pennsylvania on relation of the person or persons required by law.

The case was argued on July 15, 1964, and briefs submitted.

Historically the action of mandamus in Pennsylvania has been governed by the Act of June 8, 1893, P. L. 345, and its amendments. The act at section 1, 12 PS §1911, sets forth:

"The several courts of common pleas shall, within their respective counties, have the power to issue writs of mandamus to all officers and magistrates

elected or appointed in or for the respective county, or in or for any township, district, or place within such county, . . . . Provided, the relief, act, duty, matter, or thing, the performance of which is sought, should be given or performed within such county; . . . ."

The statute provides further at section 2, 12 PS, §1912:

"Any person desiring to obtain a writ of mandamus shall present his petition therefor, verified by affidavit, to the judge or judges of the proper court, either in session or at chambers, setting forth the facts upon which he relies for the relief sought, the act or duty whose performance he seeks, his interest in the result, the name of the person or body at whose hands performance is sought, demand or refusal to perform the act or duty, and that the petitioner is without other adequate and specific remedy at law. . . . ."

Section 3, 12 PS §1913, provides:

"The writ of mandamus may issue upon the application of any person beneficially interested."

Following adoption of the Pennsylvania Rules of Civil Procedure, Rule 1457 declares that sections 3 and 4, inter alia, of the Mandamus Act of 1893 are suspended and supplanted by provisions of the civil rules, with an express exception preserving the statute as regards damages, costs, effect and enforcement of judgments and appeals.

In defining the incidents of the mandamus action, it is necessary to ascertain to what extent the law as it existed under the statute persists today, after adoption of the rules: 11 Standard Penna. Practice, Rev. p. 243. Footnote 5 sets forth a number of mandamus cases decided since adoption of the rules, and where the Mandamus Act was found still applicable.

The Mandamus Act makes clear the essential goal of this ancient action, known as "a high prerogative writ," to afford a method whereby any citizen, ag-

grieved by failure of a public officer to perform a ministerial duty, may obtain redress through the courts. If the law governing performance of duties by a public officer is in terms which allow some scope to the officer's discretion, the writ has no application. But where the duty sought to be enforced is purely ministerial, not involving exercise of discretion, mandamus is the method designed to enable affected parties to enforce performance of official duties by those elected or appointed to administer the government.

Since ancient times a danger was recognized that some persons as busybodies or because of malice, might harass public officers by bringing numerous mandamus suits, where there was no bona fide reason for such a suit. Hence the mandamus action has been hedged about by statute and by the courts with the aim of preventing undue interference with the work of public officers. Only the citizen or other party specially suffering harm has been permitted to bring the suit, except in the case where a wrong to the public at large may be redressed through action of the Attorney General: Act of June 8, 1893, section 3, cit. supra; Dorris v. Lloyd (No. 1), 375 Pa. 474, and cases cited at 477; Commonwealth ex rel. Blanc v. Hersch, 20 D. & C. 2d 682.

The sheriff here contends that plaintiff county has not by the terms of the complaint been shown to suffer any special injury because of the sheriff's action in closing his office Saturdays; that the complaint does not show any harm or interest of plaintiff county affected by defendant's action which is distinct or different from that of the general public; that as an individual party the county has pleaded no grievance nor right to be redressed other than what would be common to the public at large in Franklin County.

For the proposition that where the interest of a party plaintiff is one in common with the whole pub-

lic, the right of the individual party to obtain redress in mandamus through his own name must be denied, defendant cites Commonwealth ex rel. Attorney General v. State Treasurer, 29 Pa. C. C. 545, affirmed in Commonwealth ex rel. The Attorney General v. Mattheus, 210 Pa. 372. To like effect is cited Kulp v. Board of Inspectors of the Berks County Prison, 23 Berks 235, affirmed 102 Pa. Superior Ct. 310; Commonwealth ex rel. Price v. Jermyn, 45 Pa. C. C. 183; Thomas v. Duffey, 22 Dist. R. 960. Defendant thus argues that plaintiff has no standing to maintain the action brought here in the name of the county.

Defendant contends that the suit, if maintained at all, must be brought by the district attorney or the Attorney General acting for the Commonwealth. Section 4 of the Act of 1893, 12 PS §1914, is cited, as follows:

"When the writ is sought to procure the enforcement of a public duty, the proceedings shall be prosecuted in the name of the commonwealth on the relation of the attorney general: Provided however, that said proceeding, in proper cases, shall be on the relation of the district attorney of the proper county: Provided further, that when said proceeding is sought to enforce a duty affecting a particular public interest of the state, it shall be on the relation of the officer entrusted with the management of such interest. . . . ."

The principle was followed in Bellevue Borough v. Penna. R. R. Co., 18 Dist. R. 945, where a mandamus suit was brought by "the borough of Bellevue, a municipal corporation, ex relation Edward S. Beans, Burgess." The court quashed the writ, holding that the Mandamus Act of 1893 confers no authority upon the burgess of a borough to carry on mandamus proceedings in the name of the municipality.

But plaintiff contends the suit is properly brought here in the name of the county as plaintiff, and relies on

the County Code of 1955, 16 PS §202(2), where it is stated:

"Each county shall have the capacity as a body corporate to

(2) sue and be sued and complain and defend in all proper courts by the name of the county of . . . . . .".

Pennsylvania Rules of Civil Procedure 1092(c) is cited:

"An action brought in the name of a party to enforce a right or to compel performance of a public act or duty in which the party has a beneficial interest distinct from that of the general public may be brought in and only in

(a) the county where a political subdivision is located when the action is against the political subdivision or an officer thereof; . . . .".

So we face the question whether the Act of 1893 in requiring that suit in mandamus when employed in behalf of the public interest generally must be brought in the name of the Commonwealth on relation of the Attorney General or district attorney has been impliedly superseded by the County Code at section 202-(2), which gives each county the right to sue as a party corporate in its own name. Pa. R. C. P. 1092(c) is ambiguous in referring to "name of the party" in that the language of the rule leaves us where we began. It doesn't make clear who is meant by "party."

Presumably the language of the Act of 1893 mentioning the Attorney General or district attorney was intended to favor order rather than chaos in the conduct of government insofar as a channel was set up for controlling the handling of mandamus, by means of the prosecuting arm of the State or county: Com. ex rel. Blanc v. Hersch, cited above. At the same time the statute creates a situation which in our view could well inhibit desirable action in the public interest where the district attorney's office in a given case

could be in the hands of obtuse office-holder of a different party or different faction of the same party from an aggrieved plaintiff, citizen or government organ.

The sheriff says the complaint does not plead or show any special interest of the county through its board of commissioners in enforcement of uniform hours for the county offices. Relying on section 3 of the Act of 1893, the sheriff contends the suit cannot be maintained at all unless the plaintiff is "beneficially interested" in the sense that the county commissioners have sustained some harm peculiar to themselves because of defendant's alleged failure to carry out a public duty.

The county's position is that the board of commissioners, as the administrative officers in charge of the county's business, is responsible for setting up a uniform system of hours for the county offices to be open, for the convenience of citizens generally.

The problem before us would have a slightly different complexion if it were posed in a county where, under the statutes, operation of the county offices is financed by fees collected in the particular office, rather than, as in the case of sixth class counties, where all fees must be deposited in the county treasury and then the expenses of the office are paid from that treasury. Under the fee system a stronger argument could have been made by the sheriff that thereby the sheriff's office, and others, are independent of the commissioners. The problem before us must be resolved on the present basis that the county offices are salaried.

A problem not entirely unrelated to the present one was before this court in "Petition to Subtitute a Surety Company, " Misc. Docket T, p. 350, opinion filed November 30, 1961. There we denied a petition by the Franklin County Board of Commissioners asking that bonds theretofore purchased by the individual office-holders from several surety companies to guarantee

faithful performance of legal duties by the clerk of courts, the coroner and the county treasurer be cancelled, because the commissioners had recently purchased a blanket performance bond at a considerable financial saving to cover all the county officers.

We did conclude, however, that though the commissioners were without power to force an officeholder to cancel such a bond already in effect, the commissioners do, as fiscal managers of the county, have the right to purchase at a financial advantage to the county, a blanket bond covering all the elected and appointed officeholders. Such a practice has since then prevailed in this county.

The commissioners now contend that, as fiscal managers of the county's business, they are specifically harmed by the action taken by the sheriff in closing Saturdays in that the commissioners have as members of the salary board joined in determining the salaries of all appointed officeholders, including members of the sheriff's staff, and that if a uniform working schedule does not prevail in all the offices, it is impossible fairly to set salaries, to have the salaries of the different office employes in correct relation to each other. The commissioners refer further to the heavy handicap their clerical staff must suffer in withholding the correct amounts for Federal income tax, social security and for State retirement funds if individual officeholders can change the hours of work at will, creating the necessity for repeatedly changing the quarterly returns filed by the county for various purposes.

Secondly, the county contends that an irregular schedule of office hours will create difficulties of janitorial maintenance in the respective offices. The sheriff's reply is that the janitor's work manages to get done in spite of the irregular office schedules already prevailing in many of the county offices. He points out that it is necessary for his own office to be open on

extra occasions in the evenings or at other times because of special work, that other offices have special times that they must be open evenings, and at odd times, and that the court itself, when trials are occurring that extend into the evening or even past midnight, may interrupt the janitorial schedule.

Thirdly, the county points to the County Code as requiring the commissioners to maintain offices for use of the elected officeholders "in the county building, courthouse or other building at the county seat." Section 405 (a) and (b) and other sections, 16 PS §405 (a) and (b), and to provide furniture, telephone service and salaries of appointed employes, and other authorized expenses, for services in administering the county government.

From these various duties the commissioners argue that their position with regard to insisting on uniform hours for the sheriff's office to be open is not on a par with that of citizens of the county generally, but arises from a special relationship and responsibility resulting from election to their particular office.

The elected officers do not as a general matter operate under the supervision of the county commissioners. But as fiscal managers of the county, the commissioners have an important function in the fixing of salaries and the making of appropriations for carrying on all the elective offices. There is, to this degree, a dual responsibility for the efficient administration of these offices.

Admittedly a certain twilight zone exists as to just where the duties of the commissioners end and where the duties of each elected officeholder in the courthouse begin. There may be some overlapping.

Most of the time, fortunately, enough good sense, cooperation and forbearance are employed by officeholders to permit working out most conflicts concerning the specific allocation of responsibilities.

It is clear that the prothonotary, the recorder of deeds, or the sheriff, for example, have important responsibilities resting directly upon the elected officer. So long as the officeholder does not violate any specific law, he is under the supervision of no one but the voters who have the opportunity every four years of reviewing what he has done.

Defendant argues that sole responsibility for fixing office hours lies with each officeholder, and that if the general citizenry feels any harm therefrom, its only recourse is at the polls. This is a long delayed method and not always an effective one. It would be well, in our view, if a uniform solution to the present problem were provided by the statutes governing the county administration. But we have searched in vain for such authority, as have counsel in the cause.

The Saturday problem here before us is beyond the scope of the situation sometimes discussed whereby some of the officers, probation officers or sheriff's deputies, for example, must perform much of the normal work outside regular office hours. The limited question we are here concerned with is what times an elective officeholder shall keep his office open, regardless of the abnormal hours of work which are followed at times by particular officers.

It can be argued with some logic that if any citizen should go to the sheriff's office on a Saturday morning to obtain execution of a writ and would find the sheriff's office closed, in a situation, for example, where levy was sought upon an execution defendant for the purpose of satisfying a large judgment, and if upon failure of the sheriff to receive and timely execute the writ, the debtor's goods were to be spirited from the jurisdiction, an action in damages might lie against the sheriff because of harm suffered by the judgment creditor as a consequence of the Saturday closing. But this possibility of an individual plaintiff seeking dam-

ages because of Saturday closing does not bear upon the problem now before the court, the solution of which must hinge upon finding what powers, if any, over the sheriff's work have been granted by the law to the county commissioners.

In Bones v. Gruhler, 29 Dist. R. 932 (Schuylkill County, 1920), an action of mandamus was brought by a taproom proprietor who had been unable to purchase the monthly retail liquor license on a Saturday, the last day of the month, due to his money order not reaching the courthouse by mail because of Saturday noon closing. The court held for the plaintiff, ordering the license granted nunc pro tunc, stating that the statutes expressly permitted the half day closing on Saturdays and that business thus interrupted could be transacted on the next business day, Monday. By implication we infer that in the absence of a closing statute the office would have had to remain open.

In Bar Association v. Lukacs, 42 D. & C. 619 (Mercer County), the bar association sought mandamus against the recorder and other elected officers of the county, including the county commissioners, to force their offices to remain open daily from 8:30 a.m. to 5 p.m., excepting Saturday afternoons and Sundays, in order that "the practicing attorneys and the general public" might have access to the public records of the county during the customary business hours.

A demurrer by the officeholders was overruled and they were ordered to answer. The court found that the bar association, having alleged a special injury, could maintain the suit without intervention of the district attorney or Attorney General.

The court left open for hearing on the merits the question whether there is a duty upon county officers to maintain public records open for inspection during customary business hours, so far as convenience to the bar is concerned.

It was stated in the opinion:

"There can be little doubt of the power of the court to supervise the county offices to prevent an intolerable inconvenience to a considerable number of citizens who require frequent access to such offices." (page 624)

And at page 625:

"The instant petition contains no direct averment that patrons of the offices are unduly hampered by the office hours now being maintained. It may be that such an inference may be drawn from the petition but the matter is not free from doubt."

The upshot of the Bar Association case is that a suit in mandamus to prevent closing of certain county offices during the usual business week may be maintained by the bar in its own name, as constituting a group of citizens having a special interest. But the case does not help us on the specific question here whether a suit can be maintained by the county commissioners in their own name against another elected officeholder to force observance of uniform hours.

Examination of the county's contentions does not convince us that the county has a special or beneficial interest in the sense our appellate courts have defined, in controlling the hours of the sheriff's office. The commissioners have the same interest that the public at large has. Their closest point to having a special interest or injury from the sheriff's closing lies in the fact that they help establish the salaries of employes. But they have no supervision over the employes. And the commissioners' fiscal interest in uniform work hours can be fully discharged by abating the salaries in appropriate cases, as they have in fact been doing. The commissioners' argument as to their special interest because of the necessity of furnishing office space and facilities for county officers, and janitorial maintenance as well, does not, we think, rise to the level that

would support their having a supervisory power over performance of the sheriff's legal duties.

The sheriff's current program includes his maintaining office hours on Friday evenings, not, it is true, for the same number of hours as under the schedule adopted by the board of commissioners at the beginning of the year. The Friday evening aspect does not control the present result. The thrust of the commissioners' argument is for uniform hours during the established business day, and that under present law those hours must include Saturday morning work.

It may be noted that the County Code as to third class counties, Act of August 9, 1955, P. L. 323, section 2301.1, as amended, 16 PS §2301.1, provides that the commissioners may close the courthouse on Saturday mornings. The fact that this special provision had to be included in this statute, and in the ones below, in order to create such a power in these particular governmental units, permits the inference that otherwise the power does not exist.

Saturday closing in cities of the first class is regulated by the Act of May 29, 1956, sec. 1, 16 PS §9671, as follows:

"The office of register of wills and the office of the prothonotary in cities of the first class may be closed on Saturdays for the transaction of any business pertaining to that office."

The act goes on to say that any transaction which the law requires to be performed at either of the offices mentioned on any day when the office is closed "pursuant to this Act" shall be valid if performed on the next succeeding business day.

The regulation of Commonwealth offices as to Saturday closing is governed by the Administrative Code, where it is provided:

"All administrative offices of the State Government shall be open for the transaction of public business at

least eight hours each day, except Saturdays, Sundays and legal holidays. The hours when such offices shall open and close shall from time to time be determined by the Executive Board." Act of April 9, 1929, P. L. 177, art. II, sec. 221; as amended June 21, 1937, P. L. 1865, sec. 1, 71 PS §81.

The Act of May 31, 1893, P. L. 188, sec. 1, as amended frequently, 44 PS §11, provides what days and half days are designated in Pennsylvania as holidays, including "every Saturday after twelve o'clock noon until twelve o'clock midnight" and prescribes that such holidays shall, for purposes of payment, acceptance or notice of dishonor of bills of exchange be treated as the first day of the week, commonly be called Sunday, and as public holidays, and such bills shall be deemed payable and presentable on the next business day.

It is reported that, at its 1964 session, the Pennsylvania Association of Elected County Officials approved for introduction in the General Assembly of 1965 a bill providing that the board of commissioners of third, fourth, fifth, sixth, seventh and eighth class counties, Franklin being of the sixth class, may by proper action close their courthouses on Saturdays, either throughout the year or for any limited period of time.

The implied effect of the foregoing would seem to be that as to both the State government and the county governments, Saturday, during usual business hours, is a work day, and a day on which the public is entitled to come to any of the offices for transaction of business. Any lawful exception would have to be based on an appropriate statute, order of State Executive Board pursuant to statute, or a resolution of the county commissioners pursuant to an empowering statute, which we don't have.

Further reasoning on this basis would indicate that, in the present state of the legislation, the sheriff in

common with other elected officeholders is under a legal duty to have his office open on Saturday, but that the power of enforcing such a legal rule does not rest upon the board of commissioners, in that they have not been able to show any special interest in having the sheriff's office open. Rather, it appears that the interest in having the sheriff's office open is one possessed by the community generally. Under the Act of 1893 this can be enforced only by suit of a citizen or group of citizens, acting through the district attorney or Attorney General, and the commissioners, as individuals, would have to fall in the latter category.

In short, the injury allegedly inflicted by the action of the sheriff is one suffered by the body politic at large, and not especially by the board of commissioners, and must be redressed according to the Act of 1893 through citizen action in the name of the Commonwealth. The commissioners as such do not have standing to maintain the suit. We do not say this ought to be the state of the law, but after study we are clear that it is the state of the law.

As members of the salary board dealing with county salaries the commissioners participate in fixing the salaries to be paid to subordinates of each elected officeholder, and are entitled to do this on the basis of a standard work week for personnel of the county offices. As a general matter no account is taken of extra hours of overtime work. When fixing salaries it would be well for the salary board to specify in the resolution the number of hours to be worked, or the basis on which the salaries are established. Perhaps by inference the salaries are set in relation to the established work week and holiday provisions set up by the resolution adopted by the commissioners each January. We are informed such a practice does not exist in other counties.

In event later facts, in any particular office, indicate

a diminution in the work week, the salary board, according to the statutes and the implications we have discussed, would be entitled to revise its salary paid for any particular post, on the basis of the fraction of the normal work week when the office was open for business.

Plaintiff argues that, if the court finds the present suit can be maintained only in the name of the Commonwealth, the court should order the caption amended accordingly. But the sheriff, conceding that under the modern rules the courts, in the interest of expediting litigation, have wide powers of amendment, argues that amendment of the caption is not legally permissible in the present case; that the defect is not one of procedure, but of substance, in that it goes to jurisdiction, to plaintiff's right to maintain the action at all. He cites 11 Standard Pennsylvania Prac. 245; Dorris v. Lloyd, 375 Pa. 474; Commonwealth ex rel. Blanc v. Hersch, 20 D. & C. 2d 682, suit brought for the Committee of 70 in Philadelphia, affirmed 402 Pa. 626; Butcher v. Civil Service Commission, 58 D. & C. 41; Thomas v. Duffey, 22 Dist. R. 960. We believe this view is the correct one; that the defect cannot be cured by amendment.

Now, August 7, 1964, defendant's motion to strike off the complaint is granted. Exception granted to plaintiff.